IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Crim. No. 09-40030 |
| ) | |
| MICHAEL S. SLAIGHT, ) | |
| ) | |
| Defendant. ) | |

**ORDER**

Before the Court is Defendant Michael S. Slaight's ("Slaight") Motion to Suppress Statements [#11]. Slaight moves to suppress statements made to Special Agent Eric Bowers ("SA Bowers") and Agent Thomas Berola ("Agent Berola") at the Rock Island, Illinois Police Department on March 16, 2009. For the reasons set forth below, the Motion to Suppress Statements made during the first section of Slaight's interview until he requested leave to smoke a cigarette is DENIED and the Motion to Suppress Statements made in response to questioning during the second section of Slaight's interview from the time he was denied his request to leave to smoke a cigarette until the interview's conclusion is GRANTED.

**BACKGROUND**

The material facts at issue are largely undisputed. On March 16, 2009, a federal search warrant was executed at Slaight's residence in Rock Island, Illinois to investigate child pornography which was previously discovered on a computer at the residence via the internet. A group of law enforcement personnel took part in the search which resulted in finding Slaight, Slaight's roommate, and a computer at the residence. All law enforcement personnel participating in the search had guns drawn when entry was

made for personal safety.

After the residence was deemed secure, all guns were put away. SA Bowers then gave Slaight a copy of the search warrant, explained that he was not under arrest, and asked Slaight if he would agree to a voluntary interview at the Rock Island Police Department. Slaight agreed and accompanied SA Bowers and Agent Berola to the police department, in the front passenger seat of SA Bowers' essentially civilian car. There is no evidence that Slaight was ever handcuffed, restrained, or threatened after agreeing to the interview. The Court finds that he voluntarily consented to go with the agents to the police department to answer their questions.

A Rock Island police officer led Slaight, SA Bowers, and Agent Berola to a very small interrogation room at the police department that contained three chairs and a table; the interrogation was audio and video recorded. After all three men were seated and prepared to begin the recorded interview, SA Bowers informed Slaight again that he was not under arrest, that he was not being detained, that the interview was voluntary, and recapped that Slaight had agreed to accompany the agents for the interview. Slaight responded that he did not have a choice because they were going to put him away anyway. Following this, SA Bowers repeated that Slaight was not under arrest, that the interview was voluntary, and that he could choose to answer questions or not answer questions. Slaight said he understood but it didn't matter because "you have what you have."

For approximately one hour, SA Bowers and Agent Berola questioned Slaight. During this time, Slaight answered most of the questions posed to him but not all. After SA Bowers indicated that he and Agent Berola were going to stop the interview for a

period of time, Slaight asked if he could step out to smoke a cigarette. SA Bowers said that he would have to check on that. Slaight responded that he figured that was coming. He was not allowed to leave. He was in custody from this point forward.

SA Bowers and Agent Berola left Slaight in the interview room for approximately forty minutes before returning. They re-entered the room, accompanied by the audible sound of a lock being undone, and proceeded to recap the prior events. SA Bowers specifically recapped how Slaight had agreed to a voluntary interview, was not restrained, and that he had agreed to the interview. Slaight protested by stating that either way they were going to do what they were going to do but eventually, he agreed to the time line.

During this time, SA Bowers read Slaight his Miranda rights from a written form which he then requested Slaight sign. At this point, Slaight asked whether he was being placed under arrest. The agents did not respond. Instead, he was read the Miranda waiver information. Agent Berola informed Slaight that he was in custody for the purpose of the interview but the determination to formally arrest him had not yet been made. Slaight again asked if he was under arrest. No response was given.

Agent Berola and SA Bowers also informed Slaight that by signing the Miranda Waiver, he was not agreeing to anything, just that he understood his rights, and was agreeing to speak with them. Slaight eventually signed the form but promptly decided that if he was being given his rights then he was going to jail and therefore he requested a lawyer. Because of this request, the agents ceased the interview, asked no more questions of Slaight, proceeded to gather their interview equipment, and left the room.

**DISCUSSION**

Slaight asks that the Court suppress statements made to SA Bowers and Agent Berola on the grounds that their interrogation was a custodial interrogation administered without giving Slaight his Miranda rights prior to the commencement. This contention rests on the allegations that Slaight did not voluntarily choose to participate in the interview at the Rock Island Police Department but instead was taken there against his will by the agents, kept in a small interrogation room, not given Miranda rights prior to questioning, and was not allowed to leave.

The Court has previously ruled that the evidence shows that Slaight did choose to accompany the agents to the Rock Island Police Department voluntarily, without threat or intimidation. The Court has also determined that Slaight was undoubtedly in custody once he asked to step out to smoke a cigarette and was denied that request by SA Bowers. Therefore, the remaining questions before the Court are whether the circumstances of Slaight's interrogation, from the time he agreed to be transported to the Police Department until he was denied the freedom to leave and smoke a cigarette, constituted a custodial interrogation, and whether Slaight knowingly and voluntarily waived his Miranda rights.

I. <u>The Court finds that the circumstances of Slaight's interrogation did not constitute a custodial interrogation and therefore Slaight's statements prior to his request to smoke a cigarette are admissible.</u>

A suspect must be both interrogated and in custody in order to require that Miranda rights be administered, so that the suspect is aware of their constitutional rights. <u>U.S. v. Barker</u>, 467 F.3d 625, 628 (7th Cir. 2006). "A custodial interrogation occurs when there is 'questioning initiated by law enforcement officers after a person

has been taken into custody or otherwise deprived of his freedom of action in any significant way." Id. (citing Miranda v. Arizona, 384 U.S. 436, 444 (1966)). The evidence is clear that Slaight was not placed under arrest prior to being questioned at the police department. Therefore, it must be determined if Slaight was "subject to a 'restraint on freedom of movement' of the degree associated with a formal arrest" at the time he was questioned. U.S. v. Jones, 21 F.3d 165, 170 (7th Cir. 1994)(citation omitted).

"[T]he test is not whether the defendant was under a subjective belief that his or her movements were restricted, but whether a reasonable person in the defendant's position would believe that he or she was free to leave." U.S. v. Budd, 549 F.3d 1140, 1145 (7th Cir. 2008)(citation omitted). In U.S. v. Budd, the court explained the totality of the circumstances test to be used to make this determination.

> "In considering the totality of the circumstances, factors include (1) whether the encounter occurred in a public place; (2) whether the suspect consented to speak with the officers; (3) whether the officers informed the individual that he was not under arrest and was free to leave; (4) whether the individuals were moved to another area; (5) whether there was a threatening presence of several officers and a display of weapons or physical force; (6) whether the officers deprived the defendant of documents she needed to continue on her way; and (7) whether the officers' tone of voice was such that their requests would likely be obeyed." Id. (citation omitted).

Applying the totality of the circumstances test to Slaight's interrogation supports the finding that Slaight was not in custody until he was denied freedom to leave and smoke a cigarette. Factors supporting the allegation that Slaight was in custody include that the interview took place in a private area of the police department and that two officers were present in a small interview room with Slaight. These factors are outweighed by the factors supporting the conclusion that Slaight was not in custody such as Slaight agreeing to transfer the interview to the police department, consenting

5

to speak to the agents, being repeatedly told that the interview was voluntary, that he was not under arrest, that he could choose to answer questions or not answers questions, and the conversational tones being used by both agents before and during the interview. There is no evidence that Slaight was ever handcuffed, restrained, or threatened by either agent, after agreeing to the interview, until the time Slaight was denied freedom to leave to smoke a cigarette, which is clearly a restraint.

In an attempt to prove that there was custody during this period, Slaight relies on People v. Gorman. 207 Ill. App. 3d 461 (4th Dist. 1991). In Gorman, three suspects were told that they were not under arrest and asked by local police officers to answer questions at the police station. Id. at 467. Two of the suspects were taken as passengers in an officer's car while the third traveled to the station on his own at a separate time. Id. at 465. Once in separate interview rooms, each suspect was denied a significant degree of freedom by actions of the police officers. Id. at 476. One was told he was not able to leave the room until after the interview was completed, one was ordered back to his interview room when he attempted to exit it, and the other was interviewed while a police officer blocked the door to exit the room. Id. It was these different and apparent means of restraint which the court found to create a custodial relationship. Id.

The Court finds that the level of restraint found in Gorman does not exist in Slaight's interview until he was denied freedom to exit the interrogation room to smoke a cigarette. See Gorman, 207 Ill. App. 3d at 476.  Before being denied freedom to exit by SA Bowers, Slaight was told multiple times that he was free to leave and eventually agreed that he understood. While Slaight argues that Agent Berola was blocking the

6

door, the evidence shows that Agent Berola was close to the door to the interview room. The door was seen opening freely without requiring Agent Berola to move his chair. The Court notes that this was an extremely small interrogation room. This room should not be used for non-custodial interviews in the future. Because of the size of the room, it was difficult for Agent Berola to place his chair a comfortable distance from SA Bowers and Slaight without being close to the door. There is, however, a great difference between being close to a door and blocking a door with furniture or the mass of one's body. The evidence shows that Slaight's interview did not rise to the level of restraint found in Gorman until Slaight actually suffered a form of restraint by not being allowed to leave the room to smoke a cigarette. See Id.

The Court finds the analysis used in U.S. v. Jones to be applicable to the facts of Slaight's interview prior to his being denied freedom to leave and smoke a cigarette. Jones, 21 F.3d at 170. The factors from the totality of circumstances test focused on in Jones were whether the suspect was physically restrained in any form, whether he was told he was not under arrest and was free to leave, and whether the law enforcement personnel involved threatened the suspect or used any "strong arm tactics." Id. According to the evidence presented, Slaight was not physically restrained in any form before being denied the right to smoke a cigarette, and he was told several times that he was free to leave. There is no evidence that any law enforcement personnel involved in the interview process threatened or used "strong arm tactics" against Slaight.

No reasonable person in Slaight's position, prior to being denied freedom to leave and smoke a cigarette, would have believed that they were not free to leave.

II.  <u>The Court finds that while Slaight was in custody, his responses to questions are inadmissable because Slaight did not knowingly and voluntarily waive his Miranda rights.</u>

The evidence demonstrates that upon the resumption of the interview after the break, Slaight was read an accurate Miranda warning from a written form. During this time period, Slaight inquired whether he was being placed under arrest multiple times without receiving an answer from either agent. He was then asked by SA Bowers to sign the form. In response, Slaight said that he needed to know if he was going to jail first. At this point in the interview, the agents attempted to explain to Slaight that he was not being placed under arrest. Agent Berola then informed Slaight that "for the purpose of the interview" he was being placed in custody, but that the agents did not know if he would be formally arrested. The agents then informed Slaight that by signing the Miranda waiver he was "not agreeing to anything, you are just saying you understand your rights, and are agreeing to talk with us, continue to talk with us."

According to <u>Miranda</u>, a "defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently." <u>Miranda</u>, 384 U.S. at 445. "[W]hether a person in custody knowingly and voluntarily waives his *Miranda* rights depends upon the totality of the circumstances." <u>United States v. Jackson</u>, 300 F.3d 740, 748 (7th Cir. 2002). The record before the Court does not support a finding, based on the totality of the circumstances, that Slaight waived his Miranda rights knowingly and voluntarily. It is unclear from the language of the agents whether the written document Slaight was asked to sign was a recognition and understanding of his rights, a waiver of his rights, an agreement to talk to the agents, or any combination thereof.

The Court does not find that Slaight waived his Miranda rights knowingly and voluntarily based on the confusing and contradictory statements of the agents. Therefore, any responses to questioning of the agents during the portion of Slaight's interview following his request to smoke a cigarette and the denial of that request are suppressed. This includes all statements made by Slaight during that time period except for his voluntary statement "I'm going to jail anyways."

## CONCLUSION

For the reasons set forth herein, the Motion to Suppress Statements [#11] is DENIED in part and GRANTED in part. Statements made between SA Bowers' denial of Slaight's request to smoke a cigarette and Slaight's voluntary statement after the interview concluded are suppressed.

ENTERED this 14th day of July, 2009.

s/ Michael M. Mihm

Michael M. Mihm

United States District Judge